A03A2215. ENGLISH v. FULTON COUNTY BUILDING AUTHORITY.
(597 SE2d 626)

MIKELL, Judge.

Auretha English filed a personal injury action against the Fulton County Building Authority (the "Authority") and Quality Living Services, Inc. ("QLS"), after she slipped and fell in the hallway of a building owned by the Authority and leased to QLS. The Authority filed a motion to dismiss, which was converted into a motion for summary judgment.

> In reviewing a grant or denial of summary judgment, this Court conducts a de novo review of the evidence. To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[1]

So construed, the evidence shows that on December 10, 1997, English went to QLS, a senior citizens center, for an exercise class. While walking into the recreation room, she slipped and fell in the hallway.

---

[1] (Citations and punctuation omitted.) *Carter v. Tokai Financial Svcs.,* 231 Ga. App. 755 (500 SE2d 638) (1998).

Upon careful inspection of the floor, the executive director of QLS located clear wax residue in the area in which English fell. The director averred that though QLS leased the building from the Authority, the Authority was responsible for cleaning duties at the center as QLS did not employ a maintenance or custodial staff.

As a result of the injuries she sustained, English filed this lawsuit against QLS and the Authority. QLS moved for summary judgment, arguing that QLS had no knowledge, actual or constructive, of the foreign substance upon which English fell. The trial court agreed and granted QLS's motion. The Authority moved to dismiss English's action on the grounds that it was entitled to sovereign immunity, that English failed to serve ante litem notice, and that service of process was insufficient. The trial court converted the Authority's motion to dismiss into a motion for summary judgment, and granted the motion. This is the order from which English appeals.[2] We affirm.

1. English argues that Authority is not immune from tort liability under the doctrine of sovereign immunity. We disagree.

Relying on *Thomas v. Hosp. Auth. of Clarke County*,[3] English argues that "an entity, though a creature of the General Assembly, does not fall within the protection of sovereign immunity unless the General Assembly of Georgia enacts legislation specifically including such entity within the ambits of sovereign immunity." In that case, the Supreme Court held that "hospital authorities, because they are neither the state nor a department or agency of the state, are not entitled to the defense of sovereign immunity."[4] The Court found it "irrelevant that the hospital authority [was] an instrumentality created by a department or agency of the state, i.e., the county."[5] The *Thomas* Court also relied on two policy reasons in concluding that the hospital authority was not entitled to the sovereign immunity defense: (1) the hospital authority was involved in an area of business

---

[2] The trial court granted QLS's motion for summary judgment. QLS is not a party to this appeal.

[3] 264 Ga. 40 (440 SE2d 195) (1994).

[4] Id. at 41.

[5] Id. at 42 (1). In so finding, the Court relied on its holdings in *McLucas v. State Bridge Bldg. Auth.*, 210 Ga. 1 (77 SE2d 531) (1953), and *Cox Enterprises v. Carroll City/County Hosp. Auth.*, 247 Ga. 39 (273 SE2d 841) (1981). In *McLucas*, the Court held that "[w]hile the [State Bridge Building] Authority is an instrumentality of the State, it is nevertheless not the State, nor a part of the State, nor an agency of the State. It is a mere creature of the State, having distinct corporate entity." *McLucas*, supra at 6 (1). In *Cox Enterprises*, the Court held that its holding in *McLucas*, supra, "applies with full force to this [hospital] Authority as well, after substituting 'city/county' for 'state.' It is clearly not a municipal corporation as such, or a county, but merely their instrumentality. And it is not their instrumentality in the sense that a department or an agency might be because it is a separate corporate entity." (Citation omitted.) *Cox Enterprises*, supra at 45.

ordinarily carried on by private enterprise, not a governmental function, thus, it should be charged with the same liabilities and responsibilities borne by a private corporation;[6] and (2) the extension of the doctrine of sovereign immunity to hospital authorities would have no impact on one of the doctrine's primary purposes; i.e., protecting the public purse, since a hospital is authorized and able to insure itself for the purpose of satisfying judgments against it.[7] The court concluded, "[g]iven the economic realities, i.e., the availability of insurance and the ability of the hospital authority to budget the purchase of this insurance, there is no reason to provide a hospital authority with the protection of sovereign immunity."[8]

Two years later, in *Miller v. Ga. Ports Auth.*,[9] the Supreme Court held that the ports authority, was "[a state agency] entitled to the defense of sovereign immunity."[10] Based on the 1945 act creating the authority, which gave it the power to develop, improve, and maintain the state's seaports and harbors, the Court explained that the ports authority was a state administrative unit because it was responsible for the state's docks.[11] Curiously, the *Miller* majority chose not to address the factors discussed by the dissent; specifically, that like the hospital authority in *Thomas*, the debt and costs of operation of the ports authority were not the state's obligation.[12]

In an attempt to reconcile the two cases, we concluded in *Jackson v. Ga. Lottery Corp.*[13] that the cases led "to [an] unsettling conclusion[, specifically,] that an entity may be a 'state agency' entitled to sovereign immunity from torts in some types of cases, but not in others. However, we [left] the cutting of that Gordian knot to our high court."[14] *Jackson* sounded in contract not tort, and therefore the GTCA did not apply. We held that the Georgia Lottery Corporation ("GLC") was not a state agency entitled to the defense of sovereign immunity.[15] In so holding, we were persuaded by the language of the statute that created the GLC, OCGA § 50-27-4, which specifically stated that it was an instrumentality of the state, not a state agency, and the line of cases construing the status of "instrumentality" to be outside of the GTCA. We also found persuasive the fact that the GLC

---

[6] *Thomas*, supra at 43 (2).

[7] Id. at 44 (2).

[8] (Footnote omitted.) Id.

[9] 266 Ga. 586 (470 SE2d 426) (1996).

[10] Id.

[11] Id. at 587.

[12] Id. at 590 (Carley, J., dissenting).

[13] 228 Ga. App. 239 (491 SE2d 408) (1997).

[14] Id. at 240 (1) (a).

[15] Id. at 242 (1) (a).

was a self-sufficient entity such that any judgments against it and its costs of operation were not the obligation of the state.[16] Thus, granting sovereign immunity to GLC was not necessary to protect the public purse.[17]

In this case, the Authority was created as "a body corporate and politic . . . which shall be deemed to be an instrumentality of the State . . . and a public corporation."[18] It is authorized to issue negotiable revenue bonds for the purpose of financing its projects.[19] "[T]he creation of the Authority, and the carrying out of its corporate purpose, is in all respect for the benefit of the people of this State, and is a public purpose and . . . the Authority . . . perform[s] an essential governmental function in the exercise of the power conferred upon it by [the County Building Authorities] Act."[20]

Unlike the hospital authority in *Thomas*[21] and lottery corporation in *Jackson*,[22] though deemed an instrumentality of the state, the Authority is not a self-sufficient entity. The Authority was designed solely to finance projects that primarily benefit the public. In fact, effective July 1, 1996, the Authority's power was restricted such that the only projects it can finance are those involving buildings or facilities intended for use as a juvenile court facility. Moreover, the legislation creating the Authority states that it performs an essential government function.[23] Furthermore, James Newsome, a risk manager of the Fulton County department of finance, averred that the Authority holds no liability insurance and is not self-insured against liability. Consequently, any judgment entered against the Authority would cost taxpayers, and the *Thomas* court made clear that one of the primary purposes of granting sovereign immunity is to protect the public purse.[24] Finally, we reject English's argument that the Authority is not entitled to the defense of sovereign immunity because its enabling legislation gave it the power to "sue and be sued." This language "does not signify a waiver of sovereign immunity against suit."[25] Therefore, for the reasons stated above, we hold that the Authority is entitled to assert the defense of sovereign immunity, and we affirm the trial court's grant of summary judgment.

---

[16] Id. at 241-242 (1) (a).

[17] Id. at 242 (1) (a).

[18] Ga. L. 1980, p. 4489, § 2.

[19] Ga. L. 1980, p. 4493, § 5.

[20] Ga. L. 1980, p. 4499, § 21.

[21] Supra.

[22] Supra.

[23] Ga. L. 1980, p. 4499, § 21.

[24] *Thomas*, supra at 43 (2).

[25] *Self v. City of Atlanta*, 259 Ga. 78, 80 (1) (377 SE2d 674) (1989).

2. We need not address the remaining enumerations of error as an order granting summary judgment that is right for any reason must be affirmed on appeal.[26]

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED MARCH 25, 2004.

*Leroy R. Johnson,* for appellant.
*Renee M. L'Eplattenier, Larry W. Ramsey, Jr., Lauren M. Hansford,* for appellee.

---

[26] *Standard v. Hobbs,* 263 Ga. App. 873, 880 (3) (589 SE2d 634) (2003).